# L. H. Arky *v.* S. H. Floyd.

[61 South. 545.]

Election of Remedies. *Breach of contract. Action for actual damages. Waiver of liquidated damages.*

Where in order to guarantee the carrying out of a contract, a sum of money is deposited by both parties to the contract as a penalty or liquidated damages and one of the parties to the contract sues the other for actual damages for a breach thereof, this is a waiver of his right to afterwards sue for the penalty, it not being the intention of the parties to the contract, that in the event of its breach the one in default should forfeit his deposit, and in addition thereto be liable to the other for actual damages.

Appeal from the chancery court of Lauderdale county. Hon. Sam Whitman, Jr., Chancellor.

Bill by S. H. Floyd against L. H. Arky and another. From a decree for complainant defendant appeals.

The facts are fully stated in the opinion of the court.

*C. Q. Hall, Hall & Jacobson,* for appellant.

The forfeiture clause of the contract would be enforcible only upon the predicate that it was intended as liquidated damages to be paid by the defaulting party to the party who had performed or was ready and willing to perform.

This was one of the subject-matters of the contract; and all matters embraced in the contract were involved in the former litigation. Both the bill and the answer in the former suit made reference to said forfeit clause as one of the subject-matters for adjudication.

The court, in response, undertook to settle, once for all, all the litigable matters under said contract, and did in pursuance of that idea and of that duty, undertake to assess and did assess against Arky, damages for his adjudged breach of contract.

No appeal was taken by either side from said decree. It therefore stands as an adjudication and final determination of all the rights of each and of both parties, and estops both to ever again relitigate all or any of said matters involved in said contract. *Thornton* v. *Natchez,* 88 Miss. 1, 41 So. 499; 2 Black on Judgments, secs. 500, 503, 504, 505, 514, 517; *Land* v. *Keirn,* 52 Miss. 341; *Hubbard* v. *Flynt,* 55 Miss. 266; *Allsborough* v. *Eggleston,* 69 Miss. 833; *Beaver* v. *Crump,* 76 Miss. 34; *Burkey* .v. *Burkett,* 81 Miss. 593; *Adams* v. *Yazoo City, etc., R. Co.,* 77 Miss. 193.

Treating that clause as a forfeiture, like reasons would apply as well as the further reasons that a court of equity abhors penalties and forfeitures and, as a general rule, will not declare or enforce them.

The holding is that the bill of equity is not maintainable for the prupose of enforcing penalties, except under very peculiar circumstances. *Railroad Com.* v. *G. & S. I. R. Co.,* 78 Miss. 750; 1 Pom. Eq. Jur. (3 Ed.), sec. 458; *Keystone Lumber Co.* v. *Y. & M. V. R. R. Co.,* 50 So. 445.

Whether the provisions in the Arky-Floyd contract may be treated as a provision for the unliquidated damages, or as a penalty, is a matter difficult of ascertainment, acording to the decisions. See the voluminous note to the case of *Madler* v. *Silverstone,* as reported in 34 L. R. A. (N. S.) 1-31.

Says the court in *Gobble* v. *Linder,* 78 Ill. 157: "No branch of the law is involved in more obscurity by contradictory decisions than whether the sum named in an agreement to secure performance will be treated as liquidated damages or penalty."

Says an Indiana case: "The decisions are in hopeless conflict and it is impossible to extract from them any satisfactory general rule. The decisions are but little more than a multitude of particular instances—a mere collection, indeed of special cases." *Jaqua* v. *Headington,* 114 Ind. 309, 16 N. E. 527.

In the case of *Madler* v. *Silverstone, supra,* the court reached the conclusion that the forfeiture provision of a contract for the exchange of real estate should be treated as liquidated damages, and should be in full of all damages for the breach.

In the instant case Floyd elected to claim damages generally and leave it to the court to determine the amount that would compensate him for the wrong done. The contract was brought before the court by bill and cross-bill, each claiming that the other had breached it. Arky sought specific performance, Floyd sought like relief as to one part and damages as to the other. The court, in response, held that Arky was not entitled to the relief asked for the reason that he had, on his part, breached the contract, and that while Floyd had not breached the contract, he was not entitled to relief by specific performance but was entitled to relief by way of damages, and then proceeded to assess the damages he had sustained, one thousand and five hundred and seventy-five dollars, and the damages so allowed him have been paid.

He is precluded by that adjudication, and by his acceptance of the amount allowed to now contend that he has not been fully compensated. If he elected to claim general damages, he cannot now claim in addition the sum agreed upon as liquidated damages, and which under his election he abandoned. In other words, if the contract was breached by Arky, he (Floyd) was entitled to be made whole, but having received compensation at once, he cannot be heard to ask to be compensated a second time.

*Baskin & Wilbourn,* for appellee.

We submit that upon the allegations of the bill in this cause, and what is contained in the answer and exhibits thereto, that there is no dispute of the fact that Mc-Morries had violated his duty in withholding the entire

five thousand dollars from Floyd. It is stated on the fourth page of the brief for appellant that Arky, by his answer, disclaimed any right to two thousand five hundred dollars deposited by Floyd, but denied any right of Floyd to the right of the two thousand and five hundred dollars deposited by him. We have read the answer of Arky, but we have failed to find any such fact so stated in Arky's answer. The bill of the appellee states positively that McMorries' trustee refuses upon demand of Floyd, to pay him five thousand dollars, or any portion of it, and this allegation in the bill is not denied by the answer of Arky; so that the fact exists that here is a trustee who has declined, at the request of Arky, to pay out the five thousand dollars or any portion of it though not having any right to it himself and though Arky has, by his fraudulent conduct put it beyond his right to claim, in a court of conscience, any portion of the five thousand dollars. Why would a court of equity turn over any portion of this five thousand dollar trust fund to Arky when he has been declared by the decree of the court of chancery, after a full and fair hearing, that Arky's fraudulent conduct prevented the carrying out of the contract of November 6, 1905. We think that justice, good faith and good conscience requires that appellee should recover the five thousand dollars in the hands of Edwin McMorries, together with interest on the same from the 28th day of February, 1910, the date of the decree against Arky, together with all the costs.

We call the court's attention to the case of *Mitchell* v. *Bank of Indianola,* 54 So. 87, and authorities cited in said opinion, amongst them being 1 Pomeroy on Equity Jurisprudence, section 151, and other authorities cited in said opinion.

It is contended that the decree in this case was erroneous, because it is the undertaking by a court of equity to enforce a penalty. This question, as the court knows, is one about which there always has been much contro··

versy, as to whether contracts where there are forfeitures
are penalties or liquidated damages. Some courts hold
that where the amounts are reasonable that it is regarded
as liquidated damages. As above suggested in this brief,
this five thousand dollars in order to secure good faith in
the performance of a contract, is surely a reasonable sum,
as the contract was one of considerable importance so far
as the amount involved was concerned; therefore, the sum
stipulated as liquidated damages, we submit, is certainly
a reasonable amount.

This court is familiar with the various tests for deter-
mining whether a sum is a penalty or liquidated damages.
One of the reasons is that where damages which may re-
sult from nonperformance of a contract are uncertain and
cannot be measured with any degree of accuracy, then the
sum agreed to be paid by the parties may be recovered as
liquidated damages.

Another rule is that the intention of the parties should
be the guide in arriving at the conclusion as to whether or
not it is liquidated damages or a penalty. The court is
authorized to look to all the circumstances surrounding
the transaction, subject-matter of the contract the inten-
tion of the parties, as well as the facts and circumstances.
The intention of the parties is to be collected from the en-
tire agreement and the attending circumstances upon a
fair interpretation of the instrument. The counsel for
the appellant has called the court's attention to the case
of *Madler* v. *Silverstone,* found in 34 L. R. A. (N. S.) 1.
The case, we submit, is an authority for the appellee in
this case, and the general rule announced in this case is
that when damages, arising from the breach of a contract,
which obligation is given to secure, are uncertain in their
nature, and are not readily susceptible to proof by the
ordinary rules of evidence, and are so disproportionate
to the probable damages suffered, and it is reasonably
clear from the whole agreement that it is the intent of
the parties to provide for liquidated damages, and not a

penalty, such a stipulation will be held to be one of liqui-
dated damages. Applying this rule to the instant case,
we submit that the contention of the appellant cannot be
maintained on the ground that it is an attempt to enforce
a penalty.

And the case of *Madler* v. *Silverstone, supra,* has a very
elaborate note, which seems to contain the views of
various courts upon this question. We are particularly
struck with the expression in the note to the following
effect:

"The trouble with this class of cases has been (as to
whether it is a penalty or liquidated damages that is
asked to be enforced) that the courts have strongly felt
the call to do equity, but instead of being frank, and rest-
ing their decisions on principles of natural justice, have
adopted the usual plan of attempting to justify their ac-
tion by existing rules."

In the instant case Arky entered into a contract know-
ing at the time that he did not and could not carry out
the same, and thereby induced the appellee to join in a
contract of this character, and the court in the case of
*Arky* v. *Floyd,* simply adjudged, after a full hearing, that
Arky entered into the contract with a fraudulent intent,
and all his acts in undertaking to carry out said contract
were characterized by fraud. If this case does not com-
pel the court to be frank and rest its decision on principles
of natural justice we are unable to see why such is not the
case.

Surely it cannot be that appellee Floyd has not the
right to demand of the trustee, McMorries, the payment
of the trust fund in his hands, placed there to secure the
good faith on the part of Arky in the performance of his
contract. Instead of exercising good faith, his whole acts
were characterized from start to finish, not only with bad
faith, but fraudulent conduct, that is wholly unjustifiable.

SMITH, C. J., delivered the opinion of the court.

In November, 1905, appellant and appellee entered into a written contract whereby appellant agreed to sell to appellee, for a consideration named therein, a certain stock of goods, wares, and merchandise owned by him, and to rent to appellee, for a series of years, the house in which he was then doing business. This contract was to be executed, and possession of the house given, on the 15th of the following January. One of the provisions of this contract was as follows: "It is further understood and agreed that, in order to guarantee the faithful carrying out of this contract, each of the parties thereto have this day deposited with Edwin McMorries, president of the First National Bank, two thousand and five hundred dollars and a copy of this contract, and that said two thousand and five hundred dollars shall be forfeited by whichever party may fail to carry out this contract; and in case of failure of either party to carry out the same as agreed upon, the said Edwin McMorries is hereby directed and authorized to pay over said money so deposited to the other party." Each party, pursuant to this provision of the contract, deposited the sum of two thousand and five hundred dollars with McMorries.

In August, 1911, appellee filed his bill in the court below, making McMorries and appellant defendants thereto, alleging that appellant had failed to comply with his contract that McMorries declined to pay to him the five thousand dollars deposited with him as hereinbefore set out, and praying that he be decreed so to do. To this bill McMorries answered, admitting possession of the money, alleging that appellant was unwilling for him to pay the same over to appellee, and prayed that the court direct him what to do with it. Appellant's anwser set up the fact that prior to the institution of this suit he had filed a bill against appellee in the chancery court of Lauderdale county, alleging that he (appellee) had broken the contract hereinbefore referred to, and praying, in effect, for

a specific performance thereof, to which bill appellee filed an answer and cross-bill, alleging the contract had been broken by appellant, and praying a decree against him for the damages alleged to have been sustained by appellee by reason thereof, which cause in due course resulted in a final decree adjudging that appellee was without fault in the matter, that the contract had been broken by appellant, and awarding appellee the actual damages sustained by him by reason thereof. This answer further alleged that appellant had obeyed this decree by paying to appellee the amount awarded him therein. Appellant's answer was excepted to by appellee as being insufficient in law, the exception sustained, and upon appellant's failure to plead over a decree *pro confesso* was entered against him, and then a final decree in accordance with the prayer of appellee's bill. This method of procedure was pursued without objection on the part of appellant.

It is wholly immaterial whether or not the money deposited by appellant with McMorries under the agreement that it should be paid to appellee in event appellant should fail to carry out his contract be deemed a penalty or liquidated damages for the reason that in either event appellee has waived any right he may have had thereto by having elected in the former suit to recover his actual damges. It was clearly not the intention of the parties to this contract that in event of its breach the one in-default should forfeit his deposit, and in addition thereto be liable to the other for all actual damages sustained by him.

Reversed, and decree here for appellant for the two thousand and five hundred dollars deposited by him with McMorries.

*Reversed.*